IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 5:19-CR-0130-H |
| AIDEN BRUCE-UMBAUGH | |

## GOVERNMENT'S AMENDED RESPONSE TO AIDEN'S BRUCE-UMBAUGH'S MOTION FOR REVIEW OF DETENTION ORDER

The United States of America ("the Government"), by and through the United States Attorney for the Northern District of Texas, files its response to Defendant's Motion For Review of Detention Order:

**A.     Factual and Procedural Background**

On November 4, 2019, local law enforcement executed a traffic stop on a vehicle in which Aiden Bruce-Umbaugh ("defendant") was a passenger. Law enforcement seized several firearms and approximately 2,000 rounds of ammunition belonging to defendant. In an interview with special agents with the Federal Bureau of Investigation (FBI), defendant admitted to being a daily user of marijuana and a recovering heroin addict.

On November 6, 2019, a warrant was issued for defendant's arrest based on a complaint. *See* Doc. 1.  On the same day, defendant was taken into federal custody pursuant to a Writ of Habeas Corpus Ad Prosequendum. *See* Doc. 2   The Government moved to detain defendant, alleging that he was both a danger to the community and a

flight risk. *See* Doc. 17. The Court set a detention hearing and preliminary hearing on November 13, 2019. On the same day, the Grand Jury returned a one-count indictment, charging defendant with Possession of a Firearm by an Unlawful User and Addict of a Controlled Substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). *See* Doc. 9.

The Detention hearing lasted two days. *See* Doc. 12. During the detention hearing, the United States called FBI Special Agent Christopher Stier to testify regarding defendant's connection to the AtomWaffen Division (AWD), his risk to the community, and his risk of flight. In support, the United States introduced 14 exhibits. *See* Doc. 15. On November 15, 2019, United States Magistrate Judge Gordon D. Bryant, Jr. made findings of fact that no conditions could be imposed to insure the defendant's appearance. *See* Doc. 18. Accordingly, defendant was ordered detained pending trial. *See* Doc. 19.

On November 19, 2019, opposing counsel filed a Motion for Review of the Detention Order. *See* Doc. 21.

### B. Applicable Law

A defendant who is ordered detained by a magistrate judge may seek review of the detention order by filing a Motion to Revoke or a Motion to Amend in the court having original jurisdiction.[1] *See* U.S.C. 18 U.S.C. § 3145(b). When reviewing a Magistrate's order of detention, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release. *United States v.*

---

[1] The Government treats Defendant's "Motion for Review of Detention Order" to be the functional equivalent of a Motion to Revoke under 18 U.S.C. § 3145(b).

**Aiden Bruce-Umbaugh**
**Government's Response to Defendant's Motion for Review of Detention Order– Page 2**

*Reuben*, 974 F.2d 580, 585-86 (5th Cir. 1992); *See also United States v. Farguson*, 721 F.Supp. 128, 129 (N.D. Tex. 1989) (Judge Fitzwater noting a *de novo* review of the audio tape of the detention hearing is sufficient in making an independent determination of proper pretrial detention). It is well within the district court's discretion to determine the propriety of pretrial release. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

Under the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community. *Id*. The lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient, both are not required. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).

In the instant case, after two days of hearing testimony, argument, and receiving evidence, the Honorable D. Gordon Bryant, Jr. concluded that defendant is a flight risk. The determination of whether a defendant poses a serious risk of flight is made based on the preponderance of the evidence. *Id*. at 250. In determining whether there are conditions of release that will reasonably assure the appearance of the person as required, a court must consider (1) the nature and circumstances of the offense charged…(2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). In ascertaining whether the risk of flight warrants detention, "the judicial officer should determine, from

the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance. *Fortna,* 769 F.2d at 250.

### C. Analysis of the *3142(g)* Factors

The defendant generally addresses several of the 3142(g) factors in his Motion for Review of Detention Order. *See* Doc. 21. For example, he discusses defendant's employment history as well as defendant's criminal history—or lack thereof. The government will endeavor to examine each factor in more detail.

#### i. The Nature and Circumstances of the Offense Charged

Title 18, United States Code, Section 3142(g)(1) enumerates several criminal offenses which militate towards detention. Included among these are criminal offenses which involve "a minor victim or a controlled substance, firearm, explosive, or destruction device." *See* 18 U.S.C. § 3142(g)(1). Criminal offenses under Title 18, United States Code, Section 922(g) are by definition crimes involving a firearm. *See United States v. Daniels*, 2018 WL 620537, *4 (N.D. Texas January 30, 2018). Because defendant is charged with a crime involving a firearm, this factor weighs in favor of detention.

#### ii. Weight of the Evidence

The weight of the evidence against the defendant is overwhelming. At the detention hearing, the government put on evidence and testimony to establish the following facts: Defendant was found in close proximity to marijuana, multiple firearms,

and thousands of rounds of ammunition. Defendant knowingly and voluntarily waived his *Miranda* rights and agreed to speak to law enforcement. During his interview, defendant admitted to using marijuana on a daily basis. He further admitted to previously being addicted to heroin. In addition to his admissions to law enforcement, defendant also made incriminating statements in recorded phone conversations while incarcerated. Specifically, defendant admitted to knowingly possessing and owning the firearms and ammunition seized from the vehicle in which he was a passenger. He further admitted to purchasing the marijuana seized from the vehicle and talked at length about suffering from withdrawal symptoms. An interstate nexus report was completed by ATF Special Agent Jason McCarthy who confirmed that each of the seized firearms were manufactured outside the State of Texas. Though courts have found this factor to be of the least importance, it nonetheless weighs in favor of detention. *United States v. Stanford*, 630 F.Supp. 2d 751, 755 (S.D. Texas 2009).

    **iii.** **Personal History and Characteristics of Defendant**

In weighing a defendant's history and characteristics, the court considers a defendant's length of residence in the community, community ties, past conduct such as drug or alcohol dependency, family ties, criminal history, and physical and mental condition. *See* 18 U.S.C. § 3142(g)(3).

    a. Community Ties

In determining whether his ties to the community are sufficient, the Fifth Circuit has noted that they must be the sort of ties "from which we can infer that a defendant is

so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence." *United States v. Reuben*, 974 F.2d 580, 585-86 (5th Cir. 1992). The defendant has no such ties to the Northern District of Texas. At the detention hearing, the government established that the defendant has never lived in the State of Texas. He has no family or friends known to the government that live within the Northern District of Texas. Nor does he have any community ties to Lubbock or West Texas. To the contrary, defendant is a resident of the State of Washington. In one jail call that was admitted at the detention hearing, defendant notes that he is homeless. His complete lack of ties to Texas and to the Lubbock community strongly weighs in favor of detention.

  b. History relating to Drug Use

As previously established, defendant admitted to using marijuana on a daily basis. He further admitted to being addicted to heroin. At the detention hearing, the court heard evidence that defendant spent three years as a heroin addict. He admitted to buying both the THC oils and the marijuana that was seized at the time of his arrest. He also made several comments regarding suffering from withdrawals. Given these admissions, this factor weighs strongly in favor of detention.

  c. Family Ties

At the detention hearing, the United States put on evidence that Defendant is estranged from his father and siblings. In one poignant recorded phone conversation, defendant asks his mother to relay a message to his father: "F*uck him. And don't ever

f*cking contact me again." Moments later, he disavows his own siblings stating that his brother and sister are both "dead to me." Given his strained family ties, this factor also weighs in favor of detention.

    d. <u>Employment History</u>

The defendant is currently unemployed and has been for several months. The United States is unaware of any particular skills that he possesses or specialized training that he has received. Given his lack of stable employment, this factor weighs in favor of detention.

    e. <u>Physical and Mental Condition</u>

Defendant appears to be an intelligent individual. He has no known physical condition that warrants detention. As such, this factor weighs in favor of release.

    f. <u>Criminal History</u>

Defendant has no known criminal history. Accordingly, this factor weighs in favor of release.

    g. <u>Character</u>

Defendant is a self-admitted Nazi. He is an active member of the radical neo-nazi organization known as the AtomWaffen Division (AWD).[2] Courts have previously considered defendant's affiliation and associations in considering whether detention was appropriate. *See generally United States v. Daniels*, 2018 WL 620537 (N.D. Texas,

---

[2] The Southern Poverty Law Center (SPLC) has designated the AtomWaffen Division as a "hate group." SPLC describes the AtomWaffen Division as a "series of terror cells that work toward civilizational collapse." *See* www.splcenter.org

January 30, 2018).  Throughout the detention hearing, the United States offered evidence that defendant not only shares in the radical views of the AWD but that he has taken overt steps in furtherance of its mission.  Defendant has actively participated in at least two "hate camps" – events where members of AWD train in hand-to-hand combat and receive firearm training.   Defendant has directly communicated with the philosophical leader of AWD.  Defendant espouses a hate ideology, a fact made clear in jail calls where he praises segregation and uses derogatory terms such as "faggot" and the n-word.  Of grave concern, defendant has a disdain for the United States government and in particular, law enforcement, which he refers to as the "pig system."   In one jail call, defendant implies that he would have taken violent action against police officers had he not been caught "off guard."[3]  AWD propaganda videos admitted at the detention hearing show members of AWD burning various flags, including the thin blue line flag, which is typically associated with law enforcement.

    **iv.**    **The Nature and Seriousness of the Danger to any Person or the Community that would be Posed by the Person's Release**

The United States still contends that Aiden Bruce-Umbaugh poses a serious danger to the community.  However, because United States Magistrate Judge D. Gordon Bryant, Jr. based his detention order on defendant's risk of flight, the United States does not specifically address the danger defendant poses to the community, other than to adopt

---

[3] At the 11:55 minute mark in Exhibit Four that was admitted at the detention hearing, defendant states, "You know what, it is probably good the cops caught me off guard when they did."  His mother immediately responds, "oh god, ok don't even say that."

and incorporate all evidence and argument stated herein and at the detention hearing for purposes of establishing said threat.

### D. Conclusion

Each of the 3142(g) factors weighs strongly in favor of detention.  Defendant is charged with a firearm offense.  The weight of the evidence against him is strong.  He lacks all ties to the Northern District of Texas and has never resided in Lubbock or any where else in West Texas for that matter.  He lacks stable employment and his associations and extreme beliefs call into question his character.  Mr. Bruce-Umbaugh's Motion for Review of Detention Order should be denied.

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

*s/ Russell Lorfing*
RUSSELL H. LORFING
Assistant United States Attorney
Texas Bar No. 24070173
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:   806-472-7351
Facsimile:   806-472-7394
E-mail:      Russell.lorfing@usdoj.gov

CERTIFICATE OF SERVICE

On November 25, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Criminal Procedure 49.

>s/ *Russell Lorfing*
>Russell H. Lorfing
>Assistant United States Attorney