UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. 5:19-CR-130-H-BQ-1 |
| | § | |
| AIDEN BRUCE-UMBAUGH | § | |

**THIRD-PARTY RESPONSE TO DEFENDANT'S REQUEST TO SEAL**

Come now third-parties KING5 and TEGNA (collectively "KING5") and file this Response pursuant to this Court's December 3, 2019 Order [ECF No. 28] to Defendant's request to have exhibits in the above-captioned matter sealed and respectfully state as follows:

**I.
INTRODUCTION**

Defendant Aiden Bruce-Umbaugh, a resident of the state of Washington, is currently before this Court charged with one count of Possession of Firearms and Ammunition by a Prohibited Person and Possession of a Firearm by an Unlawful User of a Controlled Substance in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The proceedings are a matter of significant public interest, in part because the Defendant is allegedly affiliated with a militant Neo-Nazi terroristic organization known as the Atomwaffen Division.[1]

On November 13, 2019, the day of the indictment, this Court conducted a two-day detention hearing and subsequently entered an order detaining Defendant without bond. During the hearing, the Government introduced 14 exhibits. Soon thereafter, third-party KING5, a television station serving Seattle, Washington (and the surrounding area, including Tacoma), made a request to the Court for the exhibits introduced during Defendant's detention hearing. The Court

---

[1] *See DOJ Press Release: Suspected Neo-Nazi Charged with Gun Crime*, UNITED STATES DEP'T OF JUSTICE (Nov. 14, 2019), https://www.justice.gov/usao-ndtx/pr/suspected-neo-nazi-charged-gun-crime.

1

advised the Government and Defendant of KING5's request and requested briefing from both concerning their position on the release of the exhibits. Defendant filed a Response to Media's Request for Detention Hearing Exhibits [ECF No. 25] opposing the release, which this Court has interpreted as a request by the Defendant to have the exhibits sealed ("Defendant's Request"). The Government filed its Response to Media's Request for Detention Hearing Exhibits [ECF No. 26] advising that it believed the exhibits should be made available to the public. In an Order dated December 3, 2019 [ECF No. 28], this Court requested that any interested party file a written response to Defendant's Request by December 10, 2019. KING5, an interested party and the original requestor, respectfully submits these objections to Defendant's Request.

Public access to court documents and judicial records is central to the administration of our criminal justice system and to the proper functioning of our government. The public and the press have a well-established right not only to attend criminal trials, but to inspect and copy judicial records. The presumptions of access to court proceedings and judicial records are not easily overcome, and parties must meet a high burden to justify limiting access to such proceedings and records. Here, Defendant has not met his burden of establishing that the requested exhibits should be kept from the public; accordingly, Defendant's Request should be denied.

## II.
## ARGUMENT

There is a "strong common law presumption in favor of public access to court proceedings and records." *United States v. Raybould*, 130 F. Supp.2d 829, 831 (N.D. Tex. 2000). Indeed, in a United States Supreme Court case dealing with access to tapes admitted into evidence during a criminal trial, the Court recognized a common law right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted); *see also SEC v. Van Waeyenberghe*, 990 F.2d 845,

848-49 (5th Cir. 1993) (noting that there is a "presumption in favor of the public's common law right of access to court records"); *Belo Broadcasting v. Clark*, 654 F.2d 423 (5th Cir. 1981) (same). Other courts have held that the public and the press have a right of access to judicial records under both the common law and the First Amendment to the United States Constitution. *See, e.g., United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030-31 (11th Cir. 2005) (holding that orders sealing documents in criminal case "violate[d] First Amendment standards"); *In re Associated Press*, 172 Fed. Appx. 1, 4 (4th Cir. 2006) (recognizing that the right of access to judicial records filed in connection with criminal proceedings arises both under common law and from the First Amendment).

The right of public and press access, whether derived from constitutional or common law, is especially strong where, as here, audiovisual exhibits have already been played in open court in a hearing that has been concluded. In *In re National Broadcasting Co. (Myers)*, for example, the court concluded that "there is a presumption in favor of public inspection and copying of any item entered into evidence at the public session of a trial" and affirmed the right of the press to inspect and copy videotapes entered into evidence. 635 F.2d 945, 952 (2d Cir. 1980); *see also United States v. Criden*, 648 F.2d 814 (3rd Cir. 1981) (reversing the lower court's order denying the application of appellant broadcasters to copy and rebroadcast videotaped evidence used in a criminal trial because there was a strong presumption, based on the right of access to judicial records, in favor of release). Indeed, "[o]nce . . . evidence has become known to the members of the public . . . through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." *In re Nat'l Broad. Co.*, 635 F.2d at 952. As the Fifth Circuit has

cautioned, the "discretion to seal the record of judicial proceedings is to be exercised charily." *Federal Savings & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

To overcome the general presumption of access to court records, a movant seeking to seal records must show an "overriding interest," and "any order denying openness must be 'based on findings that closure is *essential* to preserve higher values and is *narrowly tailored* to serve that interest.'" *Raybould*, 130 F.Supp.2d at 832 (quoting *Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 510 (1984)). Such reasons should "be articulated in detail, based on allegations of specific facts, not generalities and conclusions." *Id.* at 833. The presumption has not been overcome here, where Defendant's only argument against release is that there *may* be increased pre-trial publicity—that is, more than has already occurred or that, due to the nature of and public interest in the case, will likely occur as the case proceeds—and that such information could taint a jury pool when he is tried next year. As Defendant admits, this case has already garnered considerable media attention, largely due to the fact that Defendant has been linked to a Neo-Nazi group, Atomwaffen Division, and was arrested with a cache of guns and ammunition. Such attention is likely to increase regardless of whether these specific exhibits are publicly released. The fact that there will be increased public concern associated with Defendant's case does not justify sealing the records of the detention hearing, as Defendant argues, but rather counsels in favor of the release of such information.[2]

Defendant also argues that the media has already sought to "sensationalize" the case by highlighting the exhibits KING5 now seeks to obtain and points to a news report discussing propaganda videos that "spew violence" as evidence of the "sensationalized" reporting. But the very reason numerous reports discuss the propaganda videos is that those are some of the few

---

[2] Again, it is worth noting that the Government does not object to releasing the exhibits and has, in fact, agreed that sufficient grounds to seal the records have not been established.

exhibits about which the public has been provided any information at present.[3] Defendant's request to seal those records would produce the opposite result of what Defendant purports to seek, as sealing the records would prevent the public from learning—and the media reporting on—other information or exhibits introduced in support of Defendant's detention.

Here, in this case of considerable public concern, members of the public—most of whom will never even be called to appear as part of a possible jury pool—have a right to examine the evidence introduced at the detention hearing. Not only does this serve to increase the public's understanding of the criminal justice and legal system and of this specific matter, but it allows them to hold all parties accountable for how well (or poorly) the system operates. This interest is especially important here, where a resident of another state (Washington) is accused of, and being tried for, committing crimes in Texas.[4] Furthermore, to the extent potential jurors might view any reporting on the exhibits (or the case more generally), as the Government advises, any concerns about potential jurors being influenced by receiving information in advance of the trial can be addressed through *voir dire*. *Press-Enter. Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 15 (1986).

Finally, Defendant argues, as best KING5 can ascertain, that the record should be sealed because the exhibits include portions of recorded phone calls between Defendant and others and

---

[3] The information concerning the propaganda videos came from the Government's November 14th Press Release announcing the indictment.

[4] Defendant argues against allowing KING5 (or other media entities) access to the detention exhibits because he asserts that they could have attended the detention hearing to see them first-hand and did not do so. As a preliminary matter, the fact that the exhibits were previously introduced into open court weighs in favor of continued openness, not against, as defendant argues. *See In re Nat'l Broad. Co.*, 635 F.2d at 952. The fact that KING5 did not take advantage of the prior opportunity to view the exhibits does not lessen the interest in keeping access to those exhibits open. Furthermore, to the extent KING5's absence is relevant here, it weighs in favor of openness. As discussed above, both Defendant and KING5 are resident of the state of Washington, as are KING5's viewers. KING5 was not present at the detention hearing because the hearing took place on the same day as the indictment and KING5 was unaware that a Washington resident had been indicted for the crimes until after the announcement was made. Because residents of Washington state are unlikely to be able to travel to Texas to view the detention hearing or any further hearings first hand, it is important that KING5 be allowed access to the proceedings so it can keep its local citizens informed—especially in a situation where one of its local citizens in accused of and being tried for serious crimes in another state.

5

that releasing the entirety of those phone calls would interfere with privacy rights of the other participants on those phone calls. But, KING5 has not requested, and does not argue at this time for the release of, the unpublished or unintroduced portions of those phone calls. To the extent the names of the persons with whom Defendant was speaking were not made public, or private portions of those phone calls were not introduced into evidence at the hearing, KING5 does not request those at this time. However, for the reasons discussed above, the phone calls or portions thereof that were publicly played in open court or published and introduced into evidence should be released.

      For all of the above reasons, KING5 prays that this Court deny Defendant's request to seal the exhibits or record in this matter and release the exhibits to KING5.

Dated: December 10, 2019            Respectfully submitted,

**HAYNES AND BOONE, LLP**

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
State Bar No. 2407924
catherine.robb@haynesboone.com
Wesley Lewis
State Bar No. 24106204
wesley.lewis@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin TX 78701
Telephone:   (512) 867-8400
Telecopier:   (512) 867-8470

**ATTORNEYS FOR TEGNA, INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of December, 2019, I served a copy of the foregoing on the parties listed below by electronic service, and the electronic transmission was reported as complete.

Michael L King
King Law, P.C.
814 Main Street, Ste. B
Lubbock, TX 79401

Russell Lorfing-DOJ
U.S. Attorney's Office - Lubbock
1205 Texas Ave
Suite #700
Lubbock, TX 79401

                                            /s/ *Laura Lee Prather*
                                            Laura Lee Prather