CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

2019 DEC 18  PM 1:41

DEPUTY CLERK_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CASE NO: 5:19-CR-130-H-BQ-1** |
| | § | |
| | § | |
| **AIDEN BRUCE-UMBAUGH** | § | |

## ORDER

Before the Court is Defendant's Response to Media's Request for Detention Hearing Exhibits (ECF No. 25) and Government's Response to Media's Request for Detention Hearing Exhibits (ECF No. 26), both filed with the Court December 2, 2019, as well as a response filed by KING5[1] and TEGNA (KING5) (ECF No. 29), media outlets seeking copies of the exhibits in question. Upon consideration of the parties' responses and applicable law, and for the reasons set forth below, the Court **GRANTS** Defendant's motion to seal, **pending disposition of the case**.

## BACKGROUND

On November 13, 2019, a Lubbock federal grand jury returned an indictment as to Defendant, alleging one count of Possession of a Firearm by an Unlawful User and Addict of a Controlled Substance in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The Court conducted a detention hearing and, during the course of the hearing, admitted into evidence fourteen exhibits offered by the Government. The undersigned subsequently entered an order detaining Defendant, who then sought review by the District Judge of the detention order. *See* ECF No. 21 (Motion for

---

[1] "[A] television channel serving Seattle, Washington (and the surrounding area, including Tacoma) . . . ." Third-Party Resp. 1, ECF No. 29 (hereinafter Third Resp.). TEGNA, while not identified, presumably owns or has a controlling interest in KING5.

Reconsideration).   The District Judge denied Defendant's motion (ECF No. 24), resulting in his continued detention pending the January 13, 2020, trial date.

Following the detention proceedings, the Clerk of Court received a request seeking copies of all exhibits admitted during the hearing.  The Court directed the parties to file a response no later than 5:00 p.m. December 2, 2019, setting forth their respective positions concerning such release or disclosure, and both Defendant and the Government complied.  The Government raised no objection to the exhibits' release.  Defendant, however, citing his constitutional right to a fair trial and general privacy interests of third parties involved in the jail call recordings, objected to release of the exhibits.  The Court construed Defendant's response, and the objections raised therein, as a request to seal the exhibits.  The Court subsequently entered an order allowing interested third parties the opportunity to file a response, with supporting legal authority, no later than December 10, 2019, raising any objections they may have regarding Defendant's request to seal the exhibits.  ECF No. 28.   On December 10, 2019, KING5 filed a response opposing Defendant's request, with the exception of "unpublished or unintroduced portions" of recorded phone calls made by Defendant from jail, seeking only the "phone calls or portions thereof that were publicly played in open court or published and introduced into evidence . . . ."  Third Resp. 6.  The exhibits in question consist of the following:

1. Recordings of phone calls made by Defendant while in custody (Ex. Nos. 1, 2, 3, 4, 12, 13);

2. Defendant's interrogation video (Ex. No. 5);

3. Photographs of physical evidence (Ex. No. 6);

4. YouTube videos described by the Government as Atomwaffen propaganda videos (Ex. Nos. 7, 8);

5. Internet articles related to Atomwaffen and its reported activities (Ex. Nos. 9, 10, 11); and

6. Screenshot photograph from YouTube video depicting two men wearing masks (Ex. No. 15).

The Court will consider the parties' and KING5's responses in toto in resolving Defendant's request to seal the exhibits.

## APPLICABLE LAW

The media possess a First Amendment right to attend open court proceedings and report on what they have learned. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 608–09 (1978); *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 426–27 (5th Cir. Unit A Aug. 1981). The Constitution does not guarantee, however, the right to physically access or copy exhibits introduced as evidence in a court proceeding. *Warner Commc'ns*, 435 U.S. at 608–09; *Belo Broad.*, 654 F.2d at 426. Despite this lack of constitutional protection, the media nevertheless retain a common law right to access such information. *Belo Broad.*, 654 F.2d at 429–30; *see United States v. Branch*, No. 94-50103, 1994 WL 286169, at *1 (5th Cir. June 16, 1994) (unpublished) (noting that *Belo* "remains the law in this circuit" and explaining that "[t]he media shares the common law, not constitutional, right of access to exhibits"). Lacking a constitutional foundation, this right is "more easily overcome than the constitutional right of access" and is not absolute. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (5th Cir. 1986); *Belo*, 654 F.2d at 429–30.[2]

---

[2] Unlike other circuits, the Fifth Circuit has not described this right as creating a "strong" presumption of public access, but simply a factor to be weighed. "While other circuits have held that there is a strong presumption in favor of the public's common law right of access to judicial records . . . we have refused to assign a particular weight to the right." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 n.4 (5th Cir. 1993) (internal citations omitted) (citing *Belo*, 654 F.2d at 434) ("[T]he presumption—however gauged—in favor of public access to judicial records—[is] *one* of the interests to be weighed."); *see Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019) (noting "this court has repeatedly refused to so characterize the public access presumption as 'strong' or require a strong showing of proof"). Indeed, the Fifth Circuit in *Belo* stated it could find no basis in *Nixon v. Warner Communications* "from which one can derive the overpowering presumption in favor of access discovered by the Second and District of Columbia circuits." *Belo Broad.*, 654 F.2d at 434; *cf. United States v. Raybould*, 130 F. Supp. 2d 829, 831 (N.D. Tex. 2000) (citing a Sixth Circuit case the court noted that "[t]his common-law rule *has been referred to* as a 'strong common law presumption in favor of public access to court proceedings and records'" (emphasis added)).

3

Courts enjoy wide latitude in evaluating this common law right and determining the scope of access to court records. As held by the Supreme Court and recently reiterated by the Fifth Circuit, "[t]he decision whether to allow public access to court records 'is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" *Vantage Health Plan, Inc.*, 913 F.3d at 450 (quoting *Warner Commc'ns*, 435 U.S. at 599). In exercising such discretion, however, district courts do not have free rein; they must "balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe*, 990 F.2d at 848.

The specific facts and circumstances a court should consider in evaluating public release of court exhibits in a criminal case necessarily include the accused's right to a fair trial. "A heavy obligation rests on trial judges to effectuate the fair-trial guarantee of the Sixth Amendment." *United States v. Columbia Broad. Sys., Inc.*, 497 F.2d 102, 104 (5th Cir. 1974); *see Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Wash.*, 845 F.2d 1513, 1517 (9th Cir. 1988) (holding "that the press and public have a right of access to pretrial release proceedings and documents filed therein" but observing that such right "is not absolute and must be balanced against the defendant's [S]ixth [A]mendment right to a fair trial"). "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Stated simply, the trial court must govern proceedings in a manner that ensures the accused receives a fair trial comporting with fundamental due process and, in doing so, a judge is vested with the necessary "authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity." *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977) (citations omitted); *see Belo Broad.*, 654

F.2d at 434 (noting "that a number of factors may militate against public access" to courtroom evidence).

## ANALYSIS

The Court first observes that the procedure followed in conducting the detention hearing satisfied any First Amendment right the public or media possessed to access the proceedings. The hearing occurred over a two-day span in open court, during which time the Government proffered and the Court admitted the exhibits in question. Witnesses also provided testimony in reference to the exhibits, and portions of a number of the video and audio exhibits were played or shown, again in open court. Neither the Government nor Defendant made any request to close the proceedings, and the Court took no action limiting public access. The media was able to and did in fact attend the hearing, as reflected by subsequent press accounts. The question then before the Court is whether the media can obtain physical copies of the fourteen exhibits admitted during the detention hearing. KING5's citation to authority outside the Fifth Circuit notwithstanding (Third Resp. 3), its request is not one of constitutional dimension but rather a balancing between the public's common law right of access to copies of exhibits and the Defendant's constitutional right to a fair trial. *See Belo Broad.*, 654 F.2d at 430 (stating that because "the right to inspect and copy judicial records is not absolute . . . [t]he question becomes . . . under what circumstances access may be denied . . . in light of the relevant facts . . . of the particular case" (quotations omitted)).

Acknowledging the media's common law right to inspect and copy court exhibits, Defendant nevertheless asks that the Court restrict public and media access to the exhibits to ensure his constitutionally guaranteed right to a fair trial. Def. Resp. 3–5. Citing specific instances of both regional and national pre-trial publicity, Defendant argues that news reports have "sought to sensationalize this case by highlighting some of the very exhibits the media seeks to obtain." *Id.*

at 5. Defendant also seeks protection from release based on the "privacy rights" of "disinterested, uninvolved third parties" who participated in jail calls made by Defendant while in custody. *Id.* Conversely, the Government, while "defer[ring] to the court's judgment on releasing the exhibits to the public," argues that a "presumption of openness" governs criminal proceedings and that any concerns over adverse publicity can be mitigated through proper voir dire of the venire. Gov't Resp. 2–3. The Government further notes that other than the jail recordings and photographs,[3] the exhibits in question "are already available in the public domain." *Id.* at 3. KING5 echoes the Government's arguments and cites the need for access to "increase the public's understanding of the criminal justice and legal system . . . [and] hold all parties accountable for how well (or poorly) the system operates," particularly where the case involves an out-of-state defendant and the "audiovisual exhibits have already been played in open court" and the hearing has concluded. Third Resp. 5. KING5 also submits Defendant has merely offered "generalities and conclusions" rather than "specific facts" showing that sealing the exhibits is "essential" to preserving his right to a fair trial and thus failed to carry his burden. *Id.* at 4.

 *Belo Broadcasting Corp. v. Clark* is controlling authority in this circuit and governs the Court's analysis. As already noted, neither the public nor the media possess any constitutional right of access to court exhibits. *Belo Broad.*, 654 F.2d at 426–27. This Court must therefore exercise its discretion and determine "in light of the relevant facts and circumstances of [this] particular case" whether to proscribe the media's common law right of access to the requested exhibits. *See id.* at 430. In *Belo*, the media sought access to criminal trial exhibits consisting of audiotaped recordings between defendants and FBI operatives. Expressing concern over the deleterious effects broadcast of the tapes outside the courtroom could have on the pending trial,

---

[3] While not identified by the Government, Exhibit 5 (interrogation video) is presumably not in the public domain as well.

the trial judge found that publication prior to trial would "severely prejudice [defendant's] [S]ixth [A]mendment right to a fair trial" and similarly hamper the court in selecting a fair and impartial jury. *Belo Broad.*, 654 F.2d at 425. Affirming the lower court's decision and finding no abuse of discretion, the Fifth Circuit recognized that the trial judge's concern "was with the rights of a yet-to-be tried defendant [and that] the provision to a defendant of a fair trial is a reasonable and necessary concern of the presiding judge." *Id.* at 431.

Here, because Exhibits 7, 8, 9, 10, 11, and 15[4] all derive from public information reasonably available to anyone with Internet access, the exhibits presumably of most interest to KING5 are Defendant's interrogation video (Exhibit 5), numerous photographs of physical evidence in the case (Exhibit 6), and audio recordings of phone calls made by Defendant from jail to various individuals (Exhibits 1, 2, 3, 4, 12, and 13). This Court shares the concern of the trial judge in *Belo* that release of such exhibits, in their entirety, could prove prejudicial to Defendant's constitutionally guaranteed right to a fair trial. As illustrated in Defendant's response, this case and the attendant detention hearing have already generated considerable pretrial publicity, at both the local and national level. Def. Resp. 4–5. Releasing statements purportedly made by Defendant during (1) interrogation by law enforcement or (2) phone calls recorded at the jail, as well as photographs of what the Government represents to be physical evidence in the case, poses a significant risk of negatively impacting Defendant and his right to a fair and impartial trial. It does not require a great deal of imagination to envision scenarios where statements attributable to Defendant from these sources could be misquoted or presented in a context prejudicial to

---

[4] Exhibit 14 also falls into this category but was not admitted during the hearing. As such, the Clerk does not have custody of the exhibit and cannot produce it. *See generally* N.D. Tex. Local Civ. R. 79.2 (providing that "[w]ithout an order from the presiding judge, no exhibit in the custody of the court may be removed from the clerk's office while the case is pending").

Defendant—the Court is aware of one such instance having already occurred.[5]  The potential for
other similarly damaging reports increases in direct proportion to the number of exhibits released,
whether recordings, videos, or photographs.  Such possibilities weigh heavily in favor of sealing
these exhibits to avoid the danger of unfair prejudice to Defendant prior to trial.  *See, e.g.*, *In re
Spokesman-Review*, Nos. MC 08–6420–S–EJL, CR07–23–N–EJL, 2008 WL 3084252, at *3 (D.
Idaho Aug. 5, 2008) (denying media's request to unseal an exhibit, explaining that the privacy
interests of third parties and criminal defendant's right to a fair trial outweighed media's right to
material, particularly where the exhibit "relate[d] to potential testimony and/or evidence that
[might have] be[en] presented in [the trial] or, alternatively, could be deemed inadmissible").

KING5 dismisses this concern in part because Defendant has allegedly not shown
sufficient basis for sealing the exhibits where only the *possibility* of increased pre-trial publicity
"could taint a jury pool when he is tried *next year*."  Third Resp. 4 (emphasis added).  The Court
has already provided one example of publicity that could negatively impact the jury pool.  In
addition, KING5's characterization of the trial date's proximity, while technically accurate, is
misleadingly imprecise.  Defendant is set for trial January 13, 2020, roughly three-and-a-half
weeks away.  Release in such close proximity to trial would logically increase the difficulty of
seating an impartial jury, particularly in light of publicity generated by the original detention
hearing.  While KING5 and the Government argue the Court can alleviate such concerns through
effective voir dire (Gov't Resp. 3; Third Resp. 5), the Fifth Circuit has rejected such a generalized,
"one size fits all" solution.  Despite the appellants' reliance on the "smooth and effortless

---

[5] Following the detention hearing, one local media report (online and print) indicated that, in a jail call to his mother,
Defendant said the Garza County deputies were lucky that they caught him off guard *or he would have shot them.*
The actual statement, as reflected by the recording, was "[i]t's probably good that the cops caught me off guard when
they did," with no further comment from Defendant before his mother responded.  Such information, appearing in a
news source where the case is to be tried, clearly poses the risk of tainting a potential jury pool drawn from Lubbock
and the surrounding area.

empaneling of a jury" in companion criminal trials as demonstrating an absence of prejudice, the Fifth Circuit in *Belo* nevertheless affirmed the district court's sealing of the exhibits, noting that an appellate court is "in perhaps the worst possible position" to second-guess the trial judge's determination as to how to protect the defendant's rights. *Belo Broad.*, 654 F.2d at 431. And while this Court acknowledges that the concerns identified by Defendant are to some degree speculative and that a "forecast of [potential] future difficulty is by definition uncertain" (*id.*), where the court must decide between equally speculative results "[i]t is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Id.* (refusing to "second guess the trial judge on the relative costs and benefits to the efficient administration of justice of such protective measures" such as "searching voir dire examination of potential jurors . . . [or] empaneling a larger body of veniremen"); *see United States v. Gotti*, 753 F. Supp. 443, 446–48 (E.D.N.Y. 1990) (granting defendants' request to close detention hearings where risk of prejudice to the defendants was "perfectly obvious," despite no concrete examples of prejudice, and such risk far outweighed the media's interest in information).[6]

In addition to the possible negative publicity that release of such information mere weeks before trial could generate, the relatively short period remaining prior to the trial date presents the practical solution of simply delaying disclosure until after Defendant has his day in court. *See, e.g.*, *Branch*, 1994 WL 286169, at *1 (stating that the appellate court "would expect the [trial] court to allow access to public records such as trial exhibits" following completion of the trial, but

---

[6] KING5 also makes the related argument that media attention will increase regardless of whether the Court releases the exhibits, and that unsealing the exhibits would result in more accurate reporting. Third Resp. 4–5. While having some facial appeal, the Court nevertheless finds these positions unavailing. Any alleged inevitability in increased publicity provides no independent basis for releasing the exhibits—the premise that "one's Sixth Amendment right to a fair trial diminishes as one's notoriety increases is neither good logic nor sound law." *Gotti*, 753 F. Supp. at 445. And while unsealing evidence would theoretically increase accuracy in reporting, "[c]arried to its logical conclusion this assertion would dictate the judicial proceedings should never be closed." *Id.* Stated alternatively, the potential for increased accuracy in reporting does not dictate to a trial court the best manner in which to preserve a defendant's right to a fair trial or necessarily mandate an exhibit's release.

"during the trial itself we would be reluctant to question the judge's control of the trial exhibits");

*see also United States v. McVeigh*, 918 F. Supp. 1452, 1464 (W.D. Okla. 1996) (observing that

courts should not only consider a criminal defendant's right to a fair trial in determining the

media's access to documents but also "[t]he timing of the disclosure" as well as "[t]he stage of the

proceeding"). Such a "relatively limited impairment of the public's 'right to know,'" particularly

where no discernable basis exists to find that such information is "of greater interest or utility to

the public in the brief interval" between now and the trial three-and-a-half weeks hence, must be

weighed against the "likelihood of prejudice to the defendants' right to a fair trial." *In re Gannett*

*News Serv., Inc.*, 772 F.2d 113, 115 (5th Cir. 1985). In this Court's view, release of the exhibits

after trial would constitute "not absolute but only temporary" denial of access and tip the balance

in favor of provisionally sealing the exhibits to ensure Defendant's right to a fair trial. *See Gannett*

*Co., Inc. v. DePasquale*, 443 U.S. 368, 393 (1979) (finding no constitutional violation where

"[o]nce the danger of prejudice had dissipated [and] a transcript of the suppression hearing was

made available . . . the press . . . had the opportunity to inform the public of the details of the

pretrial hearing accurately and completely").

The foregoing considerations notwithstanding, KING5 argues that the basic right to

examine evidence introduced at the detention hearing "increases the public's understanding of the

criminal justice and legal system and of this specific matter . . . [and] allows [it] to hold all parties

accountable for how well (or poorly) the system operates." Third Resp. 5. KING5 also cites two

out of circuit cases for the proposition that the presumption for disclosure is "especially strong"

once audiovisual exhibits have been played in open court and the hearing is concluded. *See id.* at

3 (citing *United States v. Criden*, 648 F.2d 814 (3d Cir. 1981); *In re Nat'l Broad. Co.*, 635 F.2d

945, 952 (2d Cir. 1980)). While no reasonable disagreement can be expressed as to these general

principles, their application differs markedly between the contexts of a criminal trial, with the attendant rules of evidence, and a pretrial detention hearing. The cases cited by KING5, although not controlling authority for this Court, effectively demonstrate why a distinction should be made under the relevant facts and circumstances of this case. In both cases the exhibits in question involved audio and/or video tapes introduced into evidence during criminal trials concerning public officials accused of bribery and other breaches of the public trust. The courts admitted the exhibits after considering the attendant protections afforded by the Federal Rules of Evidence— relevance, proper foundation, and a determination of whether the probative value outweighed the danger of unfair prejudice, just to name a few. *See Criden*, 648 F.2d at 828 (observing that, while trial court expressed some concern over whether it properly admitted tapes in question *during criminal trial*, the recordings at issue were nevertheless admitted into evidence and subject to disclosure due to public's interest knowing what actually transpired, regardless of propriety of trial judge's evidentiary ruling); *In re Nat'l Broad. Co.*, 635 F.2d at 952 (explaining "that there is a presumption in favor of public inspection and copying of any item *entered into evidence* at a public session of a trial" but noting that different issues might arise "if evidence of questionable admissibility were only marked for identification" (emphasis added)). Conversely, the rules of evidence have no application in detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B); Fed. R. Evid. 1101(d)(3); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985). Because a court may rely on hearsay or other information that "would not be considered as 'evidence' under traditional trial standards" (*Fortna*, 769 F.2d at 250), such "[e]vidence . . . may present a serious threat to the defendant's fair trial right." *United States v. Chagra*, 701 F.2d 354, 364 (5th Cir. 1983) ("Evidence may be considered in a bail reduction hearing that would not be admissible at trial.").

These considerations weigh heavily in the Court's overall evaluation of KING5's request, particularly in reference to Exhibits 7, 8, 9, 10, 11, and 15 (propaganda videos and internet articles). Although these items were, at least at one time, available in the public domain, the Court believes release of such information in the form of a court exhibit could carry with it some perceived "imprimatur of validity" and potentially prejudice Defendant prior to trial. Stated alternatively, unlike a full-scale criminal trial where the court admits an exhibit after making an independent determination of its admissibility under the rules, the Government had to satisfy *no* evidentiary standard for this Court to admit the exhibits during the detention hearing. *See Chagra*, 701 F.2d at 364. As acknowledged by the Government, the Court accorded such "open source" exhibits little to no weight in reaching its decision (Gov't Resp. 3), and the only arguable references to Defendant found by the Court in these exhibits is one multiple hearsay statement describing a trip taken by "*Aidan* Bruce-Umbaugh" and an unattributed, one-line reference describing "*Aidan* Bruce-Umbaugh's" alleged affiliation with the Washington State Atomwaffen cell. Under such circumstances, and given the particularly incendiary acts and events depicted in the videos and articles, the Court finds that any public interest in such information as it relates to Defendant's case and under the record as currently developed is far outweighed by the risk of unfair prejudice the release of such information could generate, particularly when presented as an exhibit admitted in a hearing involving Defendant. Because exhibits admitted in detention hearings may never see the light of day in the actual criminal trial, where the guilt or innocence of a defendant hangs in the balance and is determined according to the rules of evidence, the Court chooses to resolve this question in a manner that maximizes its ability to empanel an impartial jury. *See, e.g., United States v. McVeigh*, 119 F.3d 806, 813–15 (10th Cir. 1997) (affirming district court's decision to

seal inadmissible pre-trial evidence and noting that court had, in part, sealed evidence to protect defendants' right to a fair trial).

## RELIEF

In consideration of the foregoing, and because a "district court's discretion to seal the record of judicial proceedings is to be exercised charily" (*Fed. Savs. & Loan Ins. Corp v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)), the Court **GRANTS** Defendant's motion to seal the exhibits as follows. The Court directs the Clerk of Court to seal the exhibits admitted during the detention hearing (Nos. 1–13, 15) until completion of Defendant's trial or resolution of this case by an intervening plea or order of dismissal. Upon dismissal, conclusion of the trial, or the District Court's acceptance of a plea resolving the case, the Clerk shall unseal the exhibits and provide copies to any entity submitting an appropriate request for such records, subject to the following limitation. Because KING5 only seeks the "phone calls or portions thereof that were publicly played in open court or published and introduced into evidence," the Government shall provide redacted copies of such exhibits (Exhibits 1, 2, 3, 4, 12, and/or 13) to the Clerk of Court containing **only the portions of the recordings played in open court**. The Government must provide such redacted exhibits within three business days of the Clerk's unsealing the other records as set forth above.

**SO ORDERED**.

**DATED**: December *18*, 2019.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE